# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark, III |
| v. | : | Mag. No. 14-3261 |
| EDGAR REYN | : | **CRIMINAL COMPLAINT** |

I, Christopher Reyes, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the United States Secret Service, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Christopher Reyes, Special Agent
United States Secret Service

Sworn to before me and subscribed in my presence,
November 25, 2014 at Newark, New Jersey

HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## ATTACHMENT A

### Count One
### (Wire Fraud Conspiracy)

From at least as early as in or around September 2013 through in or around November 2014, in the District of New Jersey and elsewhere, defendant

### EDGAR REYN

did knowingly and intentionally conspire and agree with others known and unknown to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Christopher Reyes, am a Special Agent with the United States Secret Service ("USSS"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and evidence. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause.

1. Defendant Edgar Reyn ("REYN") is a member, along with other conspirators, of a credit and gift card fraud enterprise (the "Fraud Enterprise") that uses false identities, fraudulent documents, and doctored credit card to cause millions of dollars in confirmed losses.

2. The Fraud Enterprise manufactures credit cards that display the names of certain conspirators (the "Fraud Credit Cards"). Other conspirators encode the Fraud Credit Cards with account information stolen from existing credit card customers. Yet other conspirators then use the Fraud Credit Cards to purchase gift cards at retail stores (the "Fraud Gift Cards"). The Fraud Gift Cards are then used by yet other conspirators to purchase electronic items and other consumer goods. Some of the fraudulent transactions involved in the Fraud Enterprise occurred in New Jersey.

3. Defendant REYN obtains the Fraud Gift Cards in bulk through the Fraud Enterprise and sells them to other individuals who then redeem them at retail stores. In many instances, the individuals who purchase the Fraud Gift Cards from REYN, re-sell the electronic items obtained using the Fraud Gift Cards back to REYN.

4. In or around June 2014, Co-Conspirator 1 was arrested in possession of multiple Fraud Gift Cards that Co-Conspirator 1 had obtained from REYN and that had been originally purchased with Fraud Credit Cards.

5. Co-Conspirator 1 informed law enforcement that Co-Conspirator 1 obtained Fraud Gift Cards from REYN at a discounted price relative to the face value of the gift card, purchased electronic goods at retail stores, and then sold those goods to REYN for cash or for more Fraud Gift Cards.

6. In or around June 2014, law enforcement purchased approximately 6 Apple iPads using Fraud Gift Cards that Co-Conspirator 1 had obtained from REYN. Co-Conspirator 1 then made a consensually monitored telephone call to REYN's cellular telephone. During the conversation, Co-Conspirator 1 and REYN discussed that Co-Conspirator 1 would drop off the Apple iPads to REYN at REYN's residence and then purchase additional Fraud Gift Cards.

7. Later that day, law enforcement surveilled REYN exit his residence and enter Co-Conspirator 1's vehicle. REYN then paid Co-Conspirator 1 for the 6 Apple iPads in cash.

8. In or around July 2014, REYN contacted Co-Conspirator 1 and stated that REYN had additional Fraud Gift Cards for sale. REYN offered to sell these Fraud Gift Cards to Co-Conspirator 1 for approximately 85% of the face value of the Fraud Gift Cards.

9. On or about July 7, 2014, Co-Conspirator 1 made a consensually monitored telephone call to REYN. During that call, Co-Conspirator 1 and REYN discussed the possibility of Co-Conspirator 1 obtaining a blank cash register receipt roll from a retail chain. REYN indicated that he was in possession of certain Fraud Gift Cards and that he needed to generate false receipts to sell these Fraud Gift Cards because these particular Fraud Gift Cards could not be activated without a purchase receipt corresponding to each individual Fraud Gift Card.

10. On or about August 13, 2014, Co-Conspirator 1 purchased approximately $9,000 worth of Fraud Gift Cards from REYN in exchange for approximately $2,700 in cash and 9 Apple iPads.

11. During the meeting, REYN called a retailer's telephone information system to check the balance on two Fraud Gift Cards that were then provided to Co-Conspirator 1.

12. Law enforcement then took possession of the Fraud Gift Cards that Co-Conspirator 1 purchased from REYN. Records revealed that the Fraud Gift Cards were all purchased at retail stores in New Hampshire on or about August 12, 2014, using stolen credit card information, as part of the Fraud Enterprise.

13. Records also revealed that REYN's cellular telephone was used to check the balance on more than 120 Fraud Gift Cards between on or about July 1, 2013 and on or about October 6, 2014. Those Fraud Gift Cards had a combined face value in excess of $145,000 at the time that the balances were checked. The investigation has revealed that every gift card that REYN checked the balance on was purchased using stolen credit card information, as part of the Fraud Enterprise.